UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PHILIP M. MATES, | Case No. 21-10017 |
| Plaintiff, | Sean F. Cox |
| v. | Chief United States District Judge |
| COMMISSIONER OF SOCIAL SECURITY, | Curtis Ivy, Jr. United States Magistrate Judge |
| Defendant. _____/ | |

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 20, 22)**

Plaintiff Philip Mates brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income under the Social Security Act. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's motion for summary judgment (ECF No. 20), the Commissioner's cross-motion for summary judgment (ECF No. 22), Plaintiff's reply (ECF No. 24) and the administrative record (ECF No. 17).

For the reasons below, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 20), **GRANT** Defendant's

motion for summary judgment (ECF No. 22), and **AFFIRM** the Commissioner's decision.

I.     **DISCUSSION**

    A.     **Background and Administrative History**

Plaintiff alleges his disability began on January 15, 2019, at the age of 45.[1] (ECF No. 17, PageID.70). Plaintiff's application for supplemental security income is before the Court on review. In his disability report, he listed ailments which diminished his ability to work. The ailments included: PTSD, social stress disorder, diabetes, and anxiety. (*Id.* at PageID.247).

Following the denial of his application, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). On November 7, 2019, ALJ Kevin Fallis held a hearing, at which Plaintiff and a vocational expert testified. (*Id.* at PageID.88-115). On December 16, 2019, the ALJ issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PageID.70-82). Plaintiff later submitted a request for review of the hearing decision. On November 25, 2020, the Appeals Council denied Plaintiff's request for review. (*Id.* at PageID.58). Thus, the ALJ's decision became the Commissioner's final decision.

---

[1] This is Plaintiff's amended alleged onset date. He amended the date at the administrative hearing. The amendment resulted in dismissal of his application for disability insurance benefits. (ECF No. 17, PageID.70).

Plaintiff timely commenced the instant action on January 6, 2021.

**B.     Plaintiff's Medical History**

Plaintiff alleged both physical and mental impairments impact his ability to work.  This appeal centers on his physical impairments, specifically, on his back impairment.

Plaintiff presented to a neurosurgeon during March 2019 for reports of lower back pain that radiated down his right leg coupled with numbness, tingling, and weakness in his right leg and foot.  (ECF No. 17, PageID.554).  He underwent microlumbar discectomy and hemilaminectomy surgery on April 23, 2019.  (*Id.* at PageID.553).  At his post-operative appointment on May 13, 2019, Plaintiff reported some numbness and tingling in his left leg with weakness, but overall he was doing well.  On objective examination, he demonstrated "grossly normal" palpation, range of motion, stability, motor function, and tone in his extremities.  Gait, station, heel walking, and toe walking were normal.  Neurological exam revealed 5/5 strength throughout the upper and lower extremities.  (*Id.* at PageID.555).  It was recommended that he use a cane, continue pain medication, and begin physical therapy.  (*Id.* at PageID.557).

Plaintiff returned for a follow-up appointment on June 21, 2019, during which he reported continued right leg pain with weakness and numbness, although he was getting some relief with physical therapy.  (*Id.* at PageID.558).  On

objective examination, he again had normal gait, station, heel walking, and walking. His extremities were grossly normal in range of motion, stability, motor strength, and tone. He had 5/5 strength throughout on neurologic examination. (*Id.* at PageID.559-60). The plan included obtaining an MRI, continuing pain medication, no longer using a cane, and resuming activities of daily living as tolerated. (*Id.* at PageID.562).

On July 24, 2019, Plaintiff returned to his neurosurgeon with complaints of lower back pain going down the right leg, with numbness and tingling. He reported difficulty walking due to balance problems from the weakness in his right leg. He reported his symptoms continue to worsen. (*Id.* at PageID.563). Despite his complaints, objective examination was the same as the prior two visits, including normal stability in the extremities, normal motor function, and 5/5 strength in the upper and lower extremities. (*Id.* at PageID.564). The neurosurgeon reviewed Plaintiff's July 2019 MRI. The MRI exhibited central bulging at L4-5 with recent decompression and a right L5-S1 lateral disc herniation with foraminal encroachment. (*Id.* at PageID.565). The neurosurgeon recommended a second surgery to help with symptoms, but there was not much medical explanation given for the need for a second surgery; presumably, findings in the MRI suggested a second surgery would be beneficial. (*Id.* at PageID.577).

4

On August 21, 2019, Plaintiff presented to his neurosurgeon complaining of numbness and tingling in his right leg and foot and weakness in the right leg with impaired balance. (*Id.* at PageID.579). As in the last visit, despite his complaints and the plan for a second surgery, the surgeon noted normal findings on objective examination. The only difference this time was some findings of reduced strength at 4/5 in the right lower extremity. (*Id.* at PageID.582).

Plaintiff underwent the second surgery on September 3, 2019. On October 26, 2019, Plaintiff reported numbness/tingling in the right leg with weakness in the leg. (*Id.* at PageID.597). There are no notes from an objective examination at this visit.

    **C.**    **The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2019, the alleged onset date. (ECF No. 17, PageID.73). At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; obesity, major depressive disorder; generalized anxiety disorder, and post-traumatic stress disorder. (*Id.* at PageID.73-74). At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at PageID.74-76). **Between Steps 3 and 4** of the

sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC:

> to perform sedentary work . . . except: the claimant can lift up to 10 pounds occasionally; stand and/or walk for about 2 hours and sit for up to 6 hours in an 8-hour day with normal breaks; occasionally operate foot controls; occasionally climb ramps and/or stairs, balance, stoop, kneel, crouch, crawl; never climb ladders, ropes, and scaffolds. The claimant is limited to occupations that could be performed while using a handheld assistive device for uneven terrain or ambulation; he should avoid all exposure to vibration and unprotected heights; and he should avoid even moderate use of hazardous moving machinery. Finally, he is limited to simple routine and repetitive tasks performed in a work environment free of fast paced production requirements involving only simple work related decisions and routine work place changes.

(*Id.* at PageID.76-80).  At **Step 4**, the ALJ determined that Plaintiff has no past relevant work.  (*Id.* at PageID.80).  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were existing jobs in significant numbers within the national economy that Plaintiff could perform, such as hand packer, bench assembly, and inspector.  (*Id.* at PageID.81-83).  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since January 15, 2019, the alleged onset date, through the date of the decision.

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

### D. Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[3] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that there is work available in the national economy the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990)).

### E. Standard of Review

---

[3] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless otherwise indicated.

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Even so, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### F.    Analysis

Plaintiff contends the RFC is not supported by substantial evidence. He says the ALJ gave only two reasons for finding his subjective statements inconsistent with the record and to find he was capable for performing work activities: (1) that his strength was 5/5 and he could heel to toe walk and (2) his activities of daily living. Plaintiff argues the ALJ performed a selective review of the medical records and then merely listed findings without providing any rationale for the decision. He suggests that, not only is the ALJ's discussion insufficient to establish that it is supported by substantial evidence, but that the two MRIs and his two surgeries are strong enough evidence to overcome the objective findings.

As explained above, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citation omitted). If the ALJ's decision is supported by substantial evidence, it must be affirmed even if there is substantial evidence supporting a contrary decision or if the Court would have decided the case differently were it in a position to do so.

In the view of the undersigned, the ALJ's decision falls within his zone of choice and is supported by substantial evidence. The ALJ began his RFC decision by stating that, after consideration of evidence, he found Plaintiff's statements related to the intensity, persistence, and limiting effects of his symptoms "not entirely consistent" with the medical evidence. (ECF No. 17, PageID.78). He then discussed the medical evidence, both the evidence related to the spinal surgeries, and the evidence that conflicts with Plaintiff's allegation of disability. He recognized that the record reflected Plaintiff's complaints of numbness and

tingling in his right leg following the second surgery. What came next in the decision is the ALJ's explanation of his findings:[4]

> Notwithstanding the claimant's history of spinal surgery and complaints of pain, numbness and tingling, physical exams generally reflect a lack of consistent and substantial deficits. Treatment notes from the relevant period document intact range of motion in major joints, intact neurological functioning, and intact sensation bilaterally throughout. Strength was reported as 5/5 throughout bilaterally, with a slight deficit (4/5 strength) in the right leg first observed in August 2019. There is no indication his spinal impairment precluded his ability to ambulate effectively. The claimant occasionally presented with a limp or with a cane to assist with ambulation. But treatment providers report his gait as normal and he was able to both heel- and toe walk. The claimant's generally intact physical functioning warrants limitations no greater than those assigned within the residual functional capacity, which includes limiting the claimant to less than a full range of the sedentary exertional with the assigned postural and environmental limitations.

(*Id.* at PageID.78) (internal citations omitted). In recognition of Plaintiff's documented use of a cane, the ALJ further limited him to work that could be performed while using an assistive device for uneven terrain or ambulation.

---

[4] Plaintiff argues that this recitation of evidence does not provide any rationale for discounting his statements or for the ultimate finding that he is not disabled. The undersigned disagrees. The ALJ made clear that, despite Plaintiff's complaints or reports, physical findings were normal. Normal findings do not support the alleged limitations. The undersigned can trace the ALJ's reasoning through his discussion of Plaintiff's statements and the medical evidence.

Plaintiff's argument that the ALJ selectively reviewed or discussed the evidence is not well taken. The ALJ's recitation of the medical evidence is accurate and complete—there are few records relating to Plaintiff's back and right leg problems. Plaintiff argues, for example, that one of the treatment records where he was found to have normal objective examination is the same record in which his surgeon recommended a second surgery. That he was recommended for a second surgery, according to Plaintiff, undercuts the physical examination, and thus the ALJ should not have relied on the findings. The ALJ's reliance on the findings, even from the record with the recommendation, is within the ALJ's zone of choice. The objective examinations performed by Plaintiff's spinal surgeon consistently reflecting normal findings are valid absent some statement by the physician that they should be disregarded. One view a reasonable person could take from these objective findings is that Plaintiff is functional but has symptoms that could be alleviated with surgery, i.e., that he is not so limited that he cannot work.[5]

Plaintiff also suggests, for example, that the finding of "intact range of motion in major joints" says nothing of his spinal issues and is irrelevant to the case. This contention is unavailing. Plaintiff's complaints or reports of problems

---

[5] Plaintiff did not submit an opinion on residual functional capacity from a medical provider. It is his burden to prove he is disabled, not the ALJ's burden to prove he is not disabled.

included numbness and weakness in his right leg, so a finding of normal range of motion in his extremities is relevant to the RFC. The ALJ also did not just cite normal range of motion; he mentioned all the objective findings. It was reasonable to conclude that the allegation of disabling limitations is inconsistent with normal range of motion, normal motor and muscle strength, normal gait and ability to heel and toe walk. Another reviewer might decide differently, but the ALJ's decision is supported by substantial evidence and should be affirmed even if there is substantial evidence in favor of Plaintiff's position.

It was also reasonable, and appropriate, for the ALJ to consider Plaintiff's reported activities of daily living, including that a typical day involves showering, shaving, taking medication, lying down, walking to retrieve the mail, watching tv, playing videogames, smoking marijuana, and preparing meals. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."). He stated that Plaintiff's activities and abilities reflect a level of day-to-day functioning that would not be expected of a person with the degree of limitations alleged. (*Id.* at PageID.79). Plaintiff may be correct that his activities are "minimal." That said, the ALJ did not rely solely on his activities in crafting the RFC. The ALJ relied on objective physical examination findings along with his consideration of Plaintiff's daily activities. So

his conclusion that the activities are not necessarily consistent with disability was not impermissible.

The recommendation to uphold the administrative findings should not be read to trivialize Plaintiff's physical limitations to the point that his claims are supported by the record. At any rate, the ALJ's determination that he was capable of a reduced range of sedentary work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court.

### G. Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For all these reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 20), **GRANT** Defendant's motion for summary judgment (ECF No. 22), and **AFFIRM** the Commissioner of Social Security's decision.

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right

14

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 9, 2022　　　　　　　　　　s/Curtis Ivy, Jr.
　　　　　　　　　　　　　　　　　　　　Curtis Ivy, Jr.
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge